IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

United States of America,
    Plaintiff,

vs.                    Case No. 13-10042-JTM

Leslie Lyle Camick,
    Defendant.

MEMORANDUM AND ORDER

The defendant Leslie Lyle Camick is charged with ten counts in the Indictment, including mail fraud (18 U.S.C. § 1341), immigration document fraud (18 U.S.C. § 1546(a)), making a false statement to the U.S. Patent Office (18 U.S.C. § 1001(a)(3)), false statement to a financial institution (18 U.S.C. § 3237(a)), and bank fraud (18 U.S.C. § 1344(2)). For each of these five substantive counts, the Indictment also adds a related count of aggravated identity theft, in violation of 18 U.S.C. § 1021A(a)(1) which prohibits the knowing and intentional use of another person's identity in connection with a crime. In each instance, the general nature of the crime is the same, that Camick falsely represented himself to various entities as his deceased brother, Wayne Bradley Camick.

Thus, Count 1 alleges that Camick misled the Cowley County District Court in papers related to a land transaction. Count 3 alleges that Camick, a Canadian citizen, used

his brother's birth certificate, to gain entry into the country. Count 5 alleges Lyle Camick used his brother's name to apply for a patent. Count 7 alleges that Camick used his brother's name to open an account and perform various transactions with Bank of America. And Count 9 alleges that Camick employed a scheme to obtain money by false pretenses by using the Bank of America account in his brother's name with insufficient funds.

The matter is before the court on Camick's motion which seeks to dismiss the Indictment, and to suppress evidence obtained from him when he was arrested.

*Motion to Dismiss*

The defendant argues that under *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994), the court may dismiss an indictment where there is no factual dispute. The motion then proceeds to make a number of factual arguments in support of the claim that the Indictment here fails to allege the essential elements of the crimes charged.

The gist of the motion is that the common element of materiality is lacking because he has always gone by the name of Wayne in the United States. Thus, the motion states that "almost two years ago, Mr. Camick volunteered to the ICE authorities that his birth name was Leslie Lyle Camick but that he was going by Wayne Camick." According to the motion, the defendant explained to ICE in 2011 that he had entered the United States in 2006 using his brother's birth certificate because "he owed taxes in Canada and was unable to obtain a Canadian passport or other travel documents." (Dkt. 33, at 2).

The defendant argues that his use of the name "Wayne" is not material, since he

2

always represented himself in the United States by that name. "There is no law that prohibits a brother from having a copy of a family member's birth certificate in his possession." (*Id.* at 6). As to the materiality of the identify, he asserts that it could not matter to the state court, the Bank of America, or anyone else what name he used, so long as they knew they were dealing with the same person:

> Use of the name "Wayne" instead of "Leslie" when he purchased the property was not material and reference to himself as the "Wayne" who purchased the property when his interest was under attack was not material. Neither the Court or the parties could have cared what first name he used — as long as he was the party with the interest in the property. Nothing that they did regarding the property was influenced by use of the first name "Wayne". They did not rely upon the first name "Wayne" to their detriment.

(Dkt. 33, at 4).

The court denies the defendant's motion, which rests on an intensely factual argument. That argument includes numerous assertions, wholly unproven at the present time, about what actually happened, as well as what the counter-parties in the relevant transactions *should* consider material. As the same case relied on by the defendant stresses, the relief sought here is extraordinary:

> Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence supporting a charge, may not be challenged by a pretrial motion. An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true. *Courts should refrain from considering evidence outside the indictment when testing its legal sufficiency.*

*United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) (citations omitted and emphasis added). The defendant's motion is premature given the state of the case.

Thus, for example, the defendant argues with respect to Count 3, charging

3

immigration document fraud under 18 U.S.C. § 1546, that "there is no evidence" of the necessary element of his procuring the birth certificate unlawfully or by fraud. But the government is not required to supply evidence prior to trial under *Hall*. The court may dismiss an indictment under Fed.R.Crim.P. 12 only if the facts are so undisputed that a trial would be of no assistance to determine the validity of the defense. *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010). If the government fails to prove a necessary element of an offense at trial, the defendant can move to dismiss a charge under Rule 29.

Here, the government argues that there are substantial factual disputes which preclude any dismissal under Rule 12. For example, the government takes particular exception to the idea that Camick "volunteered" his identity to ICE agents. Rather, according to the government, Camick had been detained by ICE for four days, and disclosed his true identity only when he had no choice. Further, it argues that the evidence will show that Camick affirmatively misled others about his identity. Thus it states that with respect to Bank of America, Camick filled out special forms, including a form required under the USA Patriot Act to confirm his non-U.S. citizen identity, and that his false identification was directly in conflict with the Act's purpose of identifying the true parties to financial transactions.

From the evidence before the court, it appears that the defendant filled out numerous forms, not simply as "Wayne Camick," as if he just liked the sound of that name "Wayne," but rather frequently signed the name as it appeared on his dead brother's birth certificate: "Wayne B. Camick." It is notable that Camick has still supplied no innocent

4

explanation for why he has used the false name within the United States.

Moreover, from the point of view of the recipients of the forms (whether the Patent Office, Bank of America, or the state court), the fact that a party *consistently* misrepresents his identity does not mean the misrepresentation is meaningless, that is, that it is not material. A lender, for example, won't care so much what the first name of an applicant is, but will care very much that whatever it is, it is the *true* name. Thus, if there are problems, there won't be any trouble tracking the customer down. That false name would be even more important if the customer has a history of fleeing financial responsibilities.

Of course, this is entirely supposition about what a reasonable lender might consider material, but the point is that it is a reasonable, *factual* supposition. At the present time, dismissal is not justified under Rule 12, which authorizes that relief only if all the important facts are uncontested.

*Motion to Suppress*

Camick seeks to suppress evidence contained within a briefcase, which was removed from his possession when he was arrested at the Cowley County Courthouse on March 28, 2013. He argues that the seizure cannot be justified as a search incident to arrest, since he was then in custody, given the Supreme Court's narrowing of that doctrine in *Arizona v. Gant*, 556 U.S. 332 (2009) (holding no search incident to arrest of vehicle, when defendant was then handcuffed in back of patrol car).

In its response, the government does not argue that the briefcase or satchel was

seized as a search incident to Camick's arrest. It contends that when the Homeland Security Investigations (HSI) agents executed the warrant generated upon the Indictment, they found Camick where he was appearing at the Cowley County Courthouse. Camick was there in a civil action, and his attorney was present. According to the government, HSI Agent Jay Ferreira "asked the defendant if the defendant preferred that his lawyer take the defendant's briefcase or that the agents take custody of it. The defendant told Agent Ferreira he preferred that the agents take custody of it." (Dkt. 40 at 8).

Accordingly, the government argues that the government obtained the briefcase by consent, it was checked for weapons or contraband, and its contents were inventoried. While conducting the inventory, Fereira found further evidence of the crimes charged. The government thus argues that the evidence should not be suppressed due to a combination of consent plus an inventory search.

The Tenth Circuit has observed that whether consent is voluntary is "determined by the totality of the circumstances," based on a two-part test: (1) "the government must proffer clear and positive testimony that consent was unequivocal and specific and freely given," and (2) "the government must prove that this consent was given without implied or express duress or coercion." *United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001) (quotation omitted). Further, the court has noted that an individual may voluntarily consent to a search even though he is detained. *See United States v. Dozal*, 173 F.3d 787, 796 (10th Cir.1999).

With respect to inventory search, law enforcement officers may inventory property

6

seized from a defendant in order to protect the owner's property while in police custody, to prevent claims of lost, stolen, or vandalized property, and to guard the police from danger. *Colorado v. Bertine,* 479 U.S. 367, 372 (1987). Such a search must be conducted according to standardized procedures, and the police must act in good faith and cannot search for the sole purpose of investigation. *Id.* That officers may have had an investigatory purpose in conducting the inventory search does not automatically render the search illegal, so long as the investigation was not the sole purpose of the search. *See United States v. Frank*, 864 F.2d 992, 1001 (3d Cir.1988).

Here, Agent Ferreira testified credibly that HSI employs standard and regularized procedures which call for checking property that comes into its possession which might contain weapons, narcotics, or items of value. In particular, he noted, "[w]e have had accusations in the past of people accusing us of impropriety, stealing things." The briefcase or satchel here was voluntarily placed in HSI custody, when Camick was taken into custody and his attorney refused to accept it.

The defendant stresses that the resulting look through the briefcase generated no actual list of its contents. But this is essentially a function of the fact that Ferreira found nothing of concern or value inside the briefcase, other than the evidence of Camick's use of his brother's name.

The law does not require that inventory searches be conducted in a "totally mechanical, 'all or nothing' fashion." *Florida v. Wells,* 495 U.S. 1, 4 (1990). Thus, the fact the government's review does not generate a discrete and detailed physical itemization does

7

not render an inventory search invalid. *See United States v. Kindle,* 293 Fed.Appx. 497, 500 (9th Cir.2008) (finding under the facts of the case that "an incomplete inventory list does not establish that the inventory was subterfuge for an unconstitutional investigatory search"), *United States v. Lopez,* 547 F.3d 364, 371 (2d Cir.2008) ("[t]he concept of an inventory does not demand the separate itemization of every single object").

Under *Wells* and other Supreme Court cases, the government must show that the review of confiscated property be undertaken according to standardized procedures, thus precluding the possibility that the review is simply "a ruse for a general rummaging in order to discover incriminating evidence." 495 U.S. at 4. "Compliance with procedures merely tends to ensure the intrusion is limited to carrying out the government's care-taking function. There must be something else; something to suggest the police raised the inventory-search banner in an after-the-fact attempt to justify a simple investigatory search for incriminating evidence." *United States v. Rowland*, 341 F.3d 774, 780 (8th Cir.2003) (citation and internal quotation marks omitted)

> Applying these standards, the Second Circuit has observed:
>
> We doubt, for example, that the Court intended a requirement of standardized policy as to the order in which different parts of the car are searched, or whether officers performing the search need to report the results on a standardized form, or whether the search should be conducted by the officers responsible for the impoundment decision. A standardized policy governing those questions would do nothing to safeguard the interests protected by the Fourth Amendment. *Nor do we think the Court intended to require uniformity as to whether insignificant items of little or no value must be explicitly itemized.*

*United States v. Lopez*, 547 F.3d 364, 371 (2d Cir. 2008) (emphasis added).

Here, no articles of value and no items of contraband were found in the satchel. And the evidence establishes that the HSI Agents were following general, standardized procedures in conducting an inventory review of the satchel. The requirements of the constitution are satisfied by an inventory search conducted through "reasonable police regulations ... administered in good faith." *Bertine*, 479 U.S. at 374. The evidence shows that the defendant's satchel came into the government's possession without its intention, and was searched according to standardized HSI policy. The testimony of Agent Ferreira establishes that the search was properly conducted in good faith and consistent with department policy. Thus, the failure to separately list the contents of the satchel, especially where no items of contraband or value were detected, does not support suppression of the contents. *See United States v. O'Bryant*, 775 F.2d 1528, 1534 (11th Cir. 1985) (upholding police inventory search of briefcase, notwithstanding their "failure to compile a complete written inventory of the briefcase's contents").

IT IS ACCORDINGLY ORDERED this 22nd day of July, 2013, that the defendant's Motion to Dismiss or Suppress (Dkt. 33) is hereby denied.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE