IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

United States of America,

      Plaintiff,

      vs.                     Case No. 13-10042-01-JTM

Leslie Lyle Camick,

      Defendant.

MEMORANDUM AND ORDER

Fleeing Canada to avoid child support obligations and legal difficulties arising from drunken driving charges, Leslie Lyle Camick fled to the United States, where for years he posed as Wayne B. Camick, his brother who died in infancy. In the guise of Wayne Camick, Leslie Lyle Camick entered into a business and personal relationship with Lyn Wattley, who funded a joint business enterprise. The relationship ended acrimoniously, Wattley sued for title to the company's assets, and reported that Leslie Lyle Camick had taken a company truck. When he was arrested and questioned by Immigration and Customs Enforcement (ICE) agents, the deception began to unravel.

However, in an attempt to stave off defeat in the state litigation over the former

couple's assets, Leslie Lyle Camick submitted pleadings which were materially false under the circumstances. He had earlier submitted patent applications under the false Wayne B. Camick identity. The government charged Leslie Lyle Camick with mail fraud, wire fraud, and making a false statement based on these communications. After the Indictment, Leslie Lyle Camick filed a *pro se* federal civil rights action, *Camick v. Wattley*, Case No. 13-2361-JAR (D.Kan.), alleging a conspiracy among Wattley and numerous individuals, including the local Winfield, Kansas police officer who received Wattley's stolen vehicle report. The government then filed a superseding indictment, alleging obstruction of justice. Following a trial, the defendant was convicted on all counts.

The matter is now before the court on the defendant's Motion for Judgment of Acquittal (Dkt. 113). Taken in combination with his subsequent pleadings (Dkt. 114, 116 118), the defendant Leslie Lyle Camick in part repeats many of the arguments advanced in his prior motions. (Dkt. 33, 87), and the court incorporates herein its earlier Orders and rulings denying defendants's motions (Dkt. 46, 101). For the reasons explained below, the court denies the defendant's present motion.

In reviewing a motion for acquittal under Fed.R.Cr.P. 29,

> the Court cannot weigh the evidence or consider the credibility of witnesses. Rather, the Court must view the evidence in the light most favorable to the government and determine whether the record contains sufficient evidence from which a jury might properly find defendant guilty beyond a reasonable doubt. The jury may base its verdict on both direct and circumstantial evidence, together with all reasonable inferences that can be drawn therefrom. Acquittal is proper only if the evidence implicating defendant is nonexistent or is so meager that no reasonable jury could find guilt beyond a reasonable doubt.

*United States v. Fuller*, 11-20059-KHV, 2012 WL 1673914, *1 (D. Kan. May 14, 2012) (citations omitted).

*Mail Fraud*

With respect to Count 1, Leslie Lyle Camick argues that the evidence is insufficient to sustain the conviction. He claims that there is no evidence of fraudulent intent, and stresses that he "never said he was not Leslie Lyle Camick." (Dkt. 113, at 7). Counsel for the defendant thus repeats the argument advanced at trial: "by whatever name he was called, he had an interest in the real estate which he sought to defend." *Id.* He further argues that his letter to the Kansas state court asking for more time to defend his interest in the property was true in substance – he had indeed been incarcerated in New Jersey. Anything beyond that, such as supplying his true name, was not, in the defendant's view, really material. (*Id.* at 8-9).

Further, the issue in Count 1 is not whether Leslie Lyle Camick had a valid property interest in the subject matter of the state litigation. The issue is whether he could legally continue his charade as "Wayne Camick" by using that false name in his letter to the Kansas state court. In his letter, the defendant pled for more time to defend the action, asserting that his former girlfriend had falsely reported him for stealing a company truck and that he was being held in custody. His request for an extension of time relied on the equitable nature of his position. Full disclosure of the true situation would have seriously undermined any equitable argument he might make. At that point, Camick's true identity

3

was material precisely because, if revealed, it likely would have fatally undermined his request for leniency.

According to the defendant, "the evidence was that he volunteered [his true identity] to the ICE officer in New Jersey shortly before sending the documents to the Court." (Dkt. 113, at 7). But this is untrue, if the term "volunteered" is to understood in its proper sense. The evidence at trial showed that, when he was initially detained, Camick tried to brazen out his charade, first telling ICE officers that he was Wayne Camick. Only when this lie failed did he tell them he was Leslie Lyle Camick.

The defendant stresses that all the prior pleadings in the state action had been in the name of Wayne Camick, and that he was simply continuing this usage. The defendant's brief also quotes the letter as informing the court: "I am named on the Title as 'Wayne Camick.' *Id*. at 6. Taken by itself, the quotation marks around the name might be taken as an indication that the defendant was beginning to back away from his imposture, or as a signal of a potential ambiguity. But the suggestion is not grounded in fact. The cited passage occurs in a preamble, in which the defendant explains:

> As the Joint Owner of 1202 9th Ave. East, Winfield Kansas, I am named on Title as 'Wayne Camick', Grantee, Lot 14 and the West half of Lot 15, Block 21, Central Park Addition to the City of Winfield, Cowley County Kansas, as registered with Cowley County Registrar of Deeds, Book 817, p.710 recorded June 20,2008 as notarized by Robin Barbour of Barbour Title.

The defendant then proceeds to present the argument that his claim should be excused from judgment in the state court action as he was unable to respond, asserting he had been "wrongfully detained" by ICE. He then signed the letter – without any quotation marks –

4

as "Wayne Camick, 2534 Sawmill Rd. E.H.T. N.J. 08234." (Exh. 4-E). This was in keeping with Leslie Lyle Camick's earlier Response to Petition in the state court case, in which he presented himself without any qualification as "Wayne Camick," and further stating that he "swears that all the statements contained therein are true and correct." (Exh. 4-D).

The defendant's position is effectively summarized in his contention that "[c]onsidering the evidence on Count 1, it is also clear that Wayne Camick and Leslie Lyle Camick are one in [sic] the same person." *Id.* at 6.

Again, this is simply untrue. As a simple matter of fact, the defendant is not Wayne Camick. He is Leslie Lyle Camick.[1]

And a rational fact finder could determine that Lyle Camick engaged in a scheme to defraud by persuading the state court that he had been detained through no fault of his own. The truth – that he had used a false name to enter and remain in the United States – would have fatally undermined his assertion that he was wrongfully held by ICE. A jury reasonably found the defendant acted with fraudulent intent in his mailed letter, one in which he sought to maintain his fictional identity in order to again an advantage in the state litigation. The evidence supports the defendant's conviction under Count 1.

*Patent Office Wire Fraud and False Statements*

---

[1] All of the post-trial pleadings filed on behalf of the defendant identify him simply as "Mr. Camick." This usage may tend to obscure rather than illuminate the defendant's true identity. In the present opinion the court identifies the defendant by his true name, Leslie Lyle Camick. This form of reference may be somewhat cumbersome, but this defect is more than counterbalanced by its accuracy.

The defendant next argues there is no evidence to support his conviction under Counts 3 or 5, which charged him with using his false name in official papers filed with the United States Patent Office. Count 3 alleged wire fraud in violation of 18 U.S.C. § 1342; Count 5 alleged making a false statement in violation of 18 U.S.C. § 1001(a)(3). The defendant's argument is similar to that presented under Count 1. That is, he asserts he was, in fact, the inventor of the device, and that at the time he applied for the patent, "everyone in the United States who knew Mr. Camick knew him as 'Wayne.'" (Dkt. 113, at 11). His true name, he argues, was not material to the transaction.

These arguments are as unsuccessful for Counts 3 and 5 as for Count 1. Leslie Lyle Camick may attempt to argue what facts his victims should consider material, but the jury was not compelled to agree. The defendant points to the testimony of his patent attorney that he believed his client was Wayne Camick, and believed that the only thing that should be important was his status as the inventor of the device. But the evidence presented at trial also establishes that the government maintains a strong interest in ensuring that information in its records be truthful.

Camick's argument that he was indeed the "actual inventor" of the device under 37 C.F.R. 1.41(a) is similar to his argument that, by the time of the patent application, "everyone in the United States" believed he was Wayne Camick. In other words, since the lie had continued for so long, and everyone believed it, it was no longer a lie.

But it was a lie. The "actual inventor" of the device was the defendant Leslie Lyle Camick, not Wayne B. Camick. Evidence supports the conviction under Counts 3 and 5.

The jury could reasonably determine, based on the evidence, that the defendant made a false writing about a matter within the jurisdiction of the executive branch, that he knew the writing was false, and that his actions were deliberate, willful, voluntary, and intentional. The evidence also shows that the representation as to applicant's name was material, in that the government assumes the trustworthiness of such information and that such information may influence its processing of patent applications.

The false statement law is designed to protect the integrity of information flowing to the federal government. "For a proper functioning of their regulative and reform power [federal] agencies depend] upon information supplied by the individuals and corporations with which they were dealing. The giving of false information to these agencies would, of course, seriously pervert their functions, making effective regulations impossible." *Friedman v. United States*, 374 F.2d 363, 366 (8th Cir. 1967). *See United States v. Gilliland*, 312 U.S. 86, 93 (1941). Thus, in *United States v. Parten*, 462 F.2d 430, 432 (1972), the court found that the submission of false names on customs declarations forms may constitute material misrepresentations.

Of course, the materiality of the use of a false name cannot simply be assumed. In *United States v. Ismail*, the 97 F.3d 50 (4th Cir. 1996), the court reversed the conviction of the defendant who had submitted a false name and social security number on a bank signature card, even though it explicitly agreed that "[p]roviding a false name or social security number certainly could, in a given situation, be material." However, the court observed, "at trial in this case, the Government presented *no* evidence of the materiality." (Emphasis

in *Ismail*). Rather, the government conceded that it had not "presented *any* evidence of materiality at trial ... or indeed ... *any* argument." *Id.* at 61-62 (emphasis in original)). *See United States v. Fondren*, 417 Fed.Appx. 327, 335-36 (4th Cir. 2011) (distinguishing *Ismail* as based on a complete failure of proof, and finding that the material of the use of a false name may be determined by circumstantial evidence).

In *United States v. Moore*, 612 F.3d 698, 702 (C.A..D.C. 2010), the court rejected the defendant's argument that his use of a false name on postal delivery form could not be material.

> In keeping with the reasoning above and in [*United States v.*] *Gaudin*[, 515 U.S. 506, 509 (1995)], however, the question of materiality is not to be answered by reference only to the specific circumstances of the case at hand. As the Supreme Court explained in *Gaudin*, a statement need not actually influence an agency in order to be material; it need only have "a natural tendency to influence, or [be] capable of influencing" an agency function or decision. 515 U.S. at 509, 115 S.Ct. 2310; *accord* [*United States v.*] *Hansen*, 772 F.2d [940,] 949 [(C.A.D.C. 1985)] ("Proof of actual reliance on the statement is not required; the Government need only make a reasonable showing of its potential effects"); *United States v. McBane*, 433 F.3d 344, 351 (3d Cir.2005) ("the phrase 'natural tendency' connotes qualities of the statement ... that transcend the immediate circumstances in which it is offered and inhere in the statement itself").

612 F.3d at 701-02.

In the present case, the government has presented evidence that the patent record system places high importance on the submission of true information. Brian Hanlon, Director of the Office of Patent Legal Administration testified that the Patent Office relies upon, and is influenced by, all information contained in patent application. This would include the defendant's true identity. That such information has a natural tendency to

influence the decisions of the Patent Office is also confirmed by the statutes and regulations which were admitted into evidence during the trial.

The defendant also asserts, on the basis of no authority whatsoever, that his first communication cannot constitute a false statement because it was only a provisional application. However, 18 U.S.C. § 1001(a)(3) broadly applies to "any false writing or document," and thus applies to the defendant's patent submissions.

As to Count 5, Defendant Lyle Camick largely reiterates his arguments relating to Count 3, except that he also advances the argument that this court was an inappropriate venue for Count 5. This argument repeats an argument made in the defendant's Motion in Limine. The court denied defendant's earlier motion, and denies the present motion as well.

The defendant's venue argument relies on *Travis v. United States*, 364 U.S. 631 (1961), which he takes to support the proposition that, if a case is based on the filing of a document, "the venue lies only where the document is required to be filed," and accordingly since this case "involv[es] a patent application, that location is Washington, D.C." (Dkt. 86, at 2).

Lyle Camick reads *Travis* too broadly. *Travis* dealt with a false affidavit of non-Communist history by a union office under Section 9(h) of the National Labor Relations Act. The court distinguished the NLRA's requirement for filing such affidavits from typical government filings:

> Section 9(h) ... did not require union officers to file non-Communist

9

affidavits. *If it had, the whole process of filing, including the use of the mails, might logically be construed to constitute the offense.* But this statutory design is different. It requires that the Board shall make no investigation nor issue any complaint in the matters described in s 9(h) 'unless there is on file with the Board' a non-Communist affidavit of each union officer. The filings are conditions precedent to a union's use of the Board's procedures... There would seem to be no offense, unless petitioner completed the filing in the District of Columbia.

364 U.S. at 635-36 (emphasis added). The condition precedent, the Court held, make the case similar to *United States v. Lombardo*, 241 U.S. 73 (1916), which held that the proper venue for a *failure* to file a required document is the place where it is required to be filed.

In the present case, there is no requirement to file a patent application (as in *Lombardo*), nor is there any condition precedent to criminal liability (as in *Travis*). Instead, the ordinary rule recognized in *Travis* would seem to apply: that "the whole process of filing, including the use of the mails, might logically be construed to constitute the offense." Accordingly, 18 U.S.C. § 3237(a), governing venue for offenses which begin in one district and are completed in another, is applicable. That statute provides:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
>
> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

The Tenth Circuit has adopted this standard for ordinary false statement claims,

holding that in a prosecution for making a false statement to a federally-insured bank, "[t]he proper venue ... may be either where the false statements was prepared, executed, or made, or where the offense was completed upon receipt of the false information by the bank." *United States v. Zwego*, 657 F.2d 248, 251 (10th Cir.1981).

Similarly, in *United States v. Wiles*, 102 F.3d 1043, 1059–60 (10th Cir.1996), *abrogated on other gds., Neder v. United States*, 527 U.S. 1, 12–13 (1999), the court explicitly distinguished *Travis* in a case involving the filing of a false report to the SEC. The defendant presented the same argument Camick does here – that under *Travis*, venue was only available in Washington, D.C. (where the SEC is located), and not in Colorado (where he was prosecuted). The Tenth Circuit held that venue was proper in Colorado, since "Section 1001 specifically proscribes the *making* of false statements to the government [and] we conclude that 'the whole process of filing ... constitute[s] the offense' in this instance." *Id.* (emphasis in *Wiles*).

Unlike the elements of the substantive offense, venue need only be proven by a preponderance of the evidence. *Wilkett v. United States*, 655 F.2d 1007, 1011 (10th Cir.1981), *cert. denied*, 454 U.S. 1142 (1982). The court finds that the evidence submitted at trial met this burden. There was evidence from which the jury could reasonably conclude that by setting the application in progress from Kansas, and by participating with and communicating to his Louisiana patent lawyer from Kansas, venue was appropriate in Kansas.

*Obstruction of Justice*

Defendant Lyle Camick argues that the evidence was insufficient to support a conviction for obstruction of justice under Count 7. Count 7 was predicated on Camick's decision to file a federal civil rights lawsuit against a key witness in the present action, after the Indictment against him had been returned. Camick first argues that he did not know Wattley was going actually testify in this matter, or that she had otherwise been assisting law enforcement officers. Rather, he filed his lawsuit based on events which occurred "before [he] ever had any knowledge that Ms. Wattley was providing information to federal officials." Second, he contends that the lawsuit was not false, and that he had plausible grounds for contending that Wattley had subjected him to a false arrest.

The court rejects both arguments. The court has previously addressed and rejected the defendant's first argument in its ruling denying the government's motion for injunctive relief. (Dkt. 115, at 3-4). The court addresses defendant's second argument in the context of his Supplemental Brief "legal error" arguments, which are considered below. Given its timing, content, and context, a rational juror could conclude that the federal civil rights claim Camick filed against Wattley was made with the intent to retaliate for her assistance to the present prosecution.

*Aggravated Identity Theft*

Finally, Camick argues that there is insufficient evidence to support the Counts 2, 4, and 6, which charged aggravated identity theft in connection with the underlying fraud

12

and false statement counts. In an extension of the argument made in conjunction with his Motion in Limine and to Dismiss (Dkt. 87), Lyle Camick argues that his brother's name "Wayne Camick" cannot as a matter of law constitute a "means of identification" for purposes of the aggravated identity theft statute. The court rejected this argument prior to trial, and reaches the same conclusion here.

Camick premises his argument on a Fourth Circuit decision, *United States v. Mitchell*, 518 F.3d 230, 235 (4th Cir. 2008), where the court held that "the use of another person's name by itself" is not a violation of 18 U.S.C. § 1028A because "a bare name may not be sufficiently unique—indeed, it is not likely to be sufficiently unique—to identify a specific person." The court reached this conclusion after stressing the distinction "between a means of identification of a specific (*or actual*) person and a *false* identification document." Id. at 234-35 (emphasis in *Mitchell*). Thus, a document is a "means of identification" for purposes of the identity theft statute only if it includes one or more identifiers sufficient to identify *a specific individual.*" (Emphasis in *Mitchell*). The use of a purely fictitious identity, or an identity not related to a specific person, is not enough. Camick accordingly argues that he cannot be guilty of the aggravated offense, because he merely used his brother's name.

Courts have not been eager to expand *Mitchell*. In *United States v. Sola-Cordova*, 789 F.Supp.2d 281, 253 (D.P.R. 2011), the court rejected a similar argument. The court stressed

> The specific findings in *Mitchell*, however, are couched in the particular factual background of that case. The generally applicable holding that may be gleaned from *Mitchell* is not that a name alone is *never* sufficient to identify a specific individual, but rather that it is *not likely* to do so.

See also *United States v. Savarese*, 686 F.3d 1, 7-8 (1st Cir. 2012) (*Mitchell* does not support dismissal of identity theft charge prior to trial). Even in the wake of a trial, *Mitchell* does not require dismissal of a charge where there is evidence that the defendant used additional identifying information. *See United States v. Guerrier*, 669 F.3d 1, 3–4 (1st Cir.2011).

The court finds that *Mitchell* does not support dismissal of the identity theft charges. As noted in *Sola-Cordova*, the holding in *Mitchell* was highly fact-specific. In that case, the defendant was alleged to have appropriated the name "Marcus Jackson," in Georgia. The Fourth Circuit stressed "undisputed evidence confirm[ing]" the existence of at least two persons with that name with Georgia drivers licenses. 518 F.3d at 235. "In other words, the name alone was not sufficient to identify a specific Marcus Jackson." *Id.*

There is no such evidence in the present case, certainly none that is undisputed. The defendant's argument that he only used "a name alone, in this case a first name," is incorrect. The evidence established, rather, that Leslie Lyle Camick chose a specific individual, his late brother Wayne B. Camick, to impersonate. In conjunction with this deception, he used the name "Wayne Camick" or" Wayne B. Camick, " or the initials and signature "WBC." He supplied these names in combination with other identifying information, such as the return address provided on the letter to the Cowley County District Court, in order to present the semblance of another, specific person. There is no evidence that Wayne Camick is a common or frequent name.

Otherwise, the defendant simply repeats the argument that he committed no identity theft by taking his late brother's name, because "[t]hat is how everyone knew

14

him." (Dkt. 113 at 22). The defendant's efforts at deception were long, persistent, and successful—at least for a time. But a successful deception is still a deception. Camick did not take some common or generic name, but supplied information to others which was sufficient to identify himself, falsely, as one specific individual. He assumed that person's identity and used that identity to commit the crimes otherwise discussed earlier. Defendant's argument begs the question – if he was not attempting to deceive others from learning his true identity, why did he not simply use his own name? The court accordingly rejects the defendant's argument relating to the identity theft counts.

*Legal Error Argument*

The court notes that in two Supplemental Briefs, Camick argues that the claims advanced by the government are not simply grounded on insufficient evidence, but are themselves legally defective. In advancing this argument, the defendant relies in particular on United States v. Schulte,, \_\_\_F.3d \_\_\_\_, 2014 WL 211833 (10th Cir. January 21, 2014), and *Griffin v. United States*, 502 U.S. 46, 59 (1991) as relevant to the distinction between an argument based on sufficiency of the evidence and a claim for legal error as grounds for a Rule 29 Motion.

Otherwise, these supplemental briefs present an unsupported claim that his actions are protected under the Due Process clause. Thus, in his Supplemental Brief, he contends that Count 1 is defective because he had a Due Process right "to be heard on the matter, respond to the civil law suit and do so in the same manner as it was brought." (Dkt. 114,

15

at 2). In his Second Supplemental Brief, he contends that Count 7 is defeated by his Due Process right to "file a civil lawsuit against Ms. Wattley for false arrest." (Dkt. 116, at 2).

The court rejects the defendant's due process arguments. In its Order of February 19, 2014, the court explicitly observed that litigation may rise to obstruction of justice when it is undertaken for the purpose of intimidating a witness. (Dkt. 115, at 3). The court finds no authority for the proposition that a person falsely and deliberately posing as another, who has been sued under the false name, has a due process right to continue the charade, submitting a request for equitable relief which is materially misleading. Similarly, the defendant has submitted no authority for the proposition that meritless litigation, when advanced with an intent to intimidate a witness, is constitutionally protected.

The defendant has also submitted a Reply Brief which essentially repeats his earlier arguments in a slightly different form. He presents the additional argument that Count 7 fails because there was no causal relationship between Wattley's prospective trial testimony and his federal civil rights lawsuit against her, and that his lawsuit was based on her earlier actions is submitting a false police report.

The court denies the defendant's argument. The jury was presented with evidence from which it could reasonably infer a punitive or retaliatory motive for Camick's lawsuit against a likely witness in the action. From the evidence, it was apparent that Camick and Wattley experienced a serious falling out. She had brought the quiet title action in Kansas state court, and had earlier reported the theft of a company truck to the police. This report led to Camick's detention and the ultimate unraveling of his false identity. The jury had the

16

opportunity to observe Wattley during her testimony, determine her credibility, and to weigh the basis of her state court claims against Leslie Lyle Camick..

Camick brought his federal civil rights action against Wattley after the first Indictment in this case, which raised claims of fraud relating to Wattley's state court case. The same Indictment alleged his patent application contained false statements. This application was for a device which Camick had conceived while working for Wattley, who was present at that time. He knew that she would almost certainly provide evidence in support of these charges.

In sum, the defendant's arguments, whether presented as legal error or for insufficiency of the evidence, fail.

IT IS ACCORDINGLY ORDERED this 7th day of April, 2014, that the defendant's Motion for Judgment of Acquittal (Dkt. 113) is hereby denied. The pretrial Motions in Limine and to Dismiss, Strike or Bar (Dkt. 86, 87, 94) were and remain granted in part and denied in part, as stated at the hearing conducted January 27, 2014 (Dkt. 101).

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE